**Office of Disciplinary Counsel v. Werner**

Disciplinary Board Docket no. 202 D.B. 2003.

To the Honorable Chief Justice and Justices of the Supreme Court of Pennsylvania:

RUDNITSKY, *Member,* April 27, 2005—Pursuant to Rule 208(d)(2)(iii) of the Pennsylvania Rules of Disciplinary Enforcement, the Disciplinary Board of the Supreme Court of Pennsylvania herewith submits its findings and recommendations to your honorable court with respect to the above-captioned petition for discipline.

## I. HISTORY OF PROCEEDINGS

On December 16, 2003, Office of Disciplinary Counsel filed a petition for discipline against Arthur Joseph Werner, respondent. The petition charged respondent with violations of the disciplinary rules arising from allegations of client neglect, failure to return an unearned fee, and misrepresentations to Office of Disciplinary Coun-

sel. Respondent filed an answer to petition for discipline on February 6, 2004.

A disciplinary hearing was held on May 3, 2004, before Hearing Committee 1.08 comprised of Chair John S. Summers, Esquire and Members Margarete E. Choksi, Esquire and Patrick C. Lord, Esquire. Respondent was represented by James P. Leonard, Esquire.

The Hearing Committee filed a report on January 12, 2005, finding that respondent engaged in violations of the disciplinary rules and recommending that he be suspended from the practice of law for a period of six months.

Petitioner filed a brief on exceptions to the Hearing Committee report on January 28, 2005.

This matter was adjudicated by the Disciplinary Board at the meeting of March 16, 2005.

## II. FINDINGS OF FACT

The board makes the following findings of fact:

(1) Petitioner, whose principal office is located at Suite 1400, 200 North Third Street, Harrisburg, Pennsylvania, is invested, pursuant to Rule 207 of the Pennsylvania Rules of Disciplinary Enforcement, with the power and duty to investigate all matters involving alleged misconduct of an attorney admitted to practice law in the Commonwealth of Pennsylvania and to prosecute all disciplinary proceedings brought in accordance with the various provisions of the aforesaid Rules of Disciplinary Enforcement.

(2) Respondent, Arthur Joseph Werner, was born in 1956 and was admitted to practice law in the Commonwealth in 1982. He maintains his office at 230 South Broad Street, 10th Floor, Philadelphia PA 19102. He is subject to the jurisdiction of the Disciplinary Board of the Supreme Court.

(3) Respondent has no prior history of discipline.

(4) In March 2001, Dr. Michael Silverman retained respondent to represent him in preparing a partnership agreement and documents relating to pension plans and a trust.

(5) Respondent had not previously represented Dr. Silverman and failed to advise him in writing, at or within a reasonable time after commencing the representation, of the basis or rate of his fee.

(6) At respondent's request, Dr. Silverman issued to respondent the following checks, which were negotiated as noted:

(a) On March 29, 2001, $5,000 deposited to respondent's operating account.

(b) On May 1, 2001, $2,500 deposited to Werner & Rocca P.C. operating account.

(7) Respondent failed to hold Dr. Silverman's fee in escrow pending performance of the services for which it was paid.

(8) Due to his unsupervised delegation of bookkeeping matters to an employee, respondent was unaware that the checks had been deposited in operating accounts as opposed to an escrow account.

(9) Respondent met with Dr. Silverman on several occasions to discuss the case.

(10) Thereafter, and continuing through 2001, Dr. Silverman spoke on the telephone with respondent concerning the status of the document preparation.

(11) Respondent did not always accept or return Dr. Silverman's calls.

(12) Respondent failed to prepare the documents requested by Dr. Silverman.

(13) In late summer 2001, respondent advised Dr. Silverman that respondent had a rough draft of the partnership agreement, and Dr. Silverman asked that respondent send it to him.

(14) Respondent misrepresented to Dr. Silverman that he prepared a draft.

(15) Respondent failed to complete or send Dr. Silverman any documents.

(16) By letter dated November 5, 2001, Dr. Silverman expressed his disappointment at respondent's failure to respond to his telephone calls and asked that respondent return his records, a rough draft of the partnership agreement, and the unearned portion of his retainer.

(17) By certified letter dated December 17, 2001, received by respondent's agent on December 20, Dr. Silverman asked that respondent release his documents, provide a statement of services, and refund the unearned portion of the retainer by December 27, 2001.

(18) Respondent did not respond to either of these letters.

(19) By letter dated December 27, 2001, Disciplinary Counsel advised respondent that Dr. Silverman had filed a complaint alleging that, despite the termination of his professional relationship with respondent, respondent had failed to return to Dr. Silverman his original documents, and failed to account for and refund the unearned portion of the fee which Dr. Silverman paid, and requested that respondent attend to the matter.

(20) In a January 11, 2002 telephone conversation with Disciplinary Counsel, respondent stated that he had "screwed up" the case, and that he would send the file and a refund to Dr. Silverman by January 15, 2002, with a copy to Disciplinary Counsel.

(21) Respondent did not send the file and refund to Dr. Silverman at that time.

(22) Under cover of a facsimile transmission dated February 1, 2002, respondent forwarded to Disciplinary Counsel:

(a) a copy of a letter dated January 31, 2002, to Dr. Silverman, purporting to forward to Dr. Silverman a copy of his file; a check dated January 31, 2002 in the amount of $6,240; and a personal note.

(b) a copy of check in the amount of $6,240, drawn on the Royal Bank escrow account and signed by respondent.

(23) Respondent's transmittal of a fax on February 1, 2002, with a check and letter dated January 31, 2002,

was designed by respondent to make Disciplinary Counsel believe that the check and letter had been sent on January 31, 2002.

(24) Respondent did not send the original letter and check to Dr. Silverman, nor did he provide the draft partnership agreement or a statement of service.

(25) Respondent knew that he misled Disciplinary Counsel as to the remedial actions he had taken in the matter.

(26) Respondent did not advise Disciplinary Counsel that he did not send the letter, check and other materials to Dr. Silverman.

(27) By letter dated February 6, 2002, Disciplinary Counsel acknowledged receipt of the January 31 letter, reminded respondent of the necessity to provide an accounting of his time evidencing the basis for calculation of the refund, inquired as to why the refund to Dr. Silverman was made from the escrow account when his fees had been deposited into other accounts, and asked that respondent respond and provide documentation by February 20, 2002.

(28) By letter dated March 26, 2002, Disciplinary Counsel reminded respondent of his promise to release Dr. Silverman's file and asked that respondent provide the information requested in the February 6 letter by April 8, 2002.

(29) By certified Letter Request for Statement of Respondent's Position (Form DB-7) dated May 17, 2002, received in respondent's office on May 20, 2002, Disci-

plinary Counsel formally notified respondent of Disciplinary Counsel's concerns in the matter; that respondent had forwarded the $6,420 check under cover of the January 31 letter; and asked that respondent provide financial records evidencing transactions in the accounts through which Dr. Silverman's funds were transacted.

(30) Respondent did not respond to the DB-7 letter, notify Disciplinary Counsel that he had not mailed the check to Dr. Silverman, or provide the records requested in the DB-7 letter.

(31) On July 11, 2002, petitioner notified respondent that a subpoena had been issued to him, returnable August 2, 2002.

(32) The subpoena, for production of financial records, was personally served on respondent on July 17, 2002.

(33) By letter dated July 29, 2002, respondent forwarded to Dr. Silverman a check in the amount of $7,500, dated July 28, 2002, drawn on respondent's personal account at Royal Bank, representing the full amount of the retainer.

(34) Regina Geyer is employed by respondent as a bookkeeper and has known him for five years.

(35) Ms. Geyer believes that respondent has a good reputation in the community for honesty and integrity.

(36) Alan Zibelman, Esquire, is a Philadelphia attorney who has known respondent for several years.

(37) At the time of the hearing, Mr. Zibelman was representing respondent in a civil matter.

(38) Mr. Zibelman believes that respondent has a good reputation in the community for honesty and integrity.

(39) Respondent expressed remorse for his misconduct toward Dr. Silverman, but did not acknowledge or express sincere regret for misleading Disciplinary Counsel.

## III. CONCLUSIONS OF LAW

By his conduct as set forth above, respondent violated the following Rules of Professional Conduct:

(1) R.P.C. 1.3—A lawyer shall act with reasonable diligence and promptness in representing a client.

(2) R.P.C. 1.4(a)—A lawyer shall keep a client informed about the status of a matter and promptly comply with reasonable requests for information.

(3) R.P.C. 1.5(b)—When a lawyer has not regularly represented the client, the basis or rate of the fee shall be communicated to the client, in writing, before or within a reasonable time after commencing the representation.

(4) R.P.C. 1.15(a)—A lawyer shall hold property of a client or third person that is in a lawyer's own possession in connection with a representation separate from the lawyer's own property.

(5) R.P.C. 1.15(b)—Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. A lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the

client or third person, shall promptly render a full accounting regarding such property.

(6) R.P.C. 1.16(d)—Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interest, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee that has not been earned.

(7) R.P.C. 8.1(a)—A lawyer is subject to discipline if the lawyer has made a materially false statement in, or if the lawyer has deliberately failed to disclose a material fact requested in connection with, the lawyer's application for admission to the bar or any disciplinary matter.

(8) R.P.C. 8.4(c)—It is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit or misrepresentation.

## IV. DISCUSSION

This matter is before the Disciplinary Board on a petition for discipline charging respondent with violations of the ethical rules arising out of his client neglect and misrepresentations to Disciplinary Counsel. Respondent has admitted, and the board finds, based on the evidence of record, that in respondent's representation of Dr. Michael Silverman, respondent violated Rules 1.3, 1.4(a), 1.5(b), 1.15(a), 1.15(b), and 1.16(d).

Respondent began and continued his representation of Dr. Silverman, a client he had never before represented,

without a written fee agreement. He then took a retainer which was deposited by his bookkeeper in respondent's operating account, instead of properly placing it in an escrow account for safekeeping. While respondent did not know that the fee was improperly deposited, it is clear that he was careless in supervising the activities of his bookkeeper. Respondent failed to answer his client's inquiries about the status of his legal matter. While respondent testified that he prepared a draft of the partnership agreement, the Hearing Committee found that this was not a credible statement. The board is guided by the committee's findings on credibility of witnesses and finds nothing of record to negate this finding. The only explanation offered by respondent for his neglect of Dr. Silverman's affairs was respondent's unfamiliarity with the area of law involved.

More serious than the charges of neglect are the charges of misrepresentation by respondent to Disciplinary Counsel. Although not admitted to by respondent, the board finds that petitioner proved by clear and convincing evidence that respondent did violate Rules of Professional Conduct 8.1(a) and 8.4(c). Respondent deceived Disciplinary Counsel in two ways. First, on February 1, 2002, he sent a back-dated letter to Disciplinary Counsel from which Disciplinary Counsel reasonably concluded that respondent had returned Dr. Silverman's retainer the day before. The Hearing Committee found respondent's testimony about the circumstances of the letter to be lacking in credibility. Again, the board is guided by the committee's finding on credibility, as nothing in the record is persuasive of a different finding. The second way in which respondent deceived Disciplinary Coun-

sel was during the next six months when he failed to inform Disciplinary Counsel that he had not sent the retainer check. Respondent was obligated to disclose this fact pursuant to Rule 8.1(a).

This case presents an example of an attorney who, after finding himself in a situation of neglecting his professional responsibilities to a single client, made the situation exponentially worse by actively misleading Disciplinary Counsel as to purported remedial measures. The underlying neglect of Dr. Silverman was regrettable; however, respondent's conduct toward Disciplinary Counsel was particularly egregious because it reveals a core failure to act honestly, which in turn suggests unfitness to practice law.

Additionally, the committee found on several occasions that respondent failed to testify credibly at his disciplinary hearing. Specifically, the committee did not believe that respondent ever prepared a draft of Dr. Silverman's partnership agreement, nor did they believe his explanation of the circumstances surrounding the letter he sent to Office of Disciplinary Counsel. Respondent's testimony as to his remorse for his actions was found to be insincere, particularly in regard to the misconduct involving Office of Disciplinary Counsel.

Respondent provided no persuasive mitigation. The testimony of his two character witnesses, while credible, was not particularly weighty, as one witness was his bookkeeper and the other witness his personal lawyer, both respondent's employees in some fashion. Respondent has no history of discipline in his 23 years of practice, making this incident even more unfortunate.

The board is persuaded that some measure of suspension will best protect the public and maintain the integrity of the bar and the disciplinary system. A range of penalties has been imposed in the past for similar misconduct. In the matter of *In re Anonymous No. 126 D.B. 92,* 26 D.&C.4th 427 (1995), an attorney was suspended after he failed to comply with a client's request that he return the client's file, and misrepresented to Chief Disciplinary Counsel that he had returned the file. This attorney provided credible mitigating factors as to great personal trauma occurring at the time of the misconduct. The board recommended and the Supreme Court imposed a six-month suspension.

In the matter of *In re Anonymous No. 91 D.B. 1990,* 14 D.&C.4th 597 (1992), an attorney who neglected clients' cases to their detriment and misrepresented the status of the cases was suspended for a period of one year and one day. In the matter of *In re Anonymous No. 77 D.B. 1993,* 34 D.&C.4th 214 (1996), an attorney was suspended for one year after he engaged in a scheme to misrepresent to referral counsel his share of the fee in a personal injury matter. The attorney made misleading statements and offered deceptive testimony. This attorney further attempted to cover his tracks with Office of Disciplinary Counsel in its investigation of a subsequent matter. The board found mitigating circumstances which led the board to conclude that a one-year suspension was appropriate.

The board is persuaded that a suspension of one year and one day is appropriate to address respondent's misconduct. His misrepresentations to Disciplinary Counsel

were severe and damaging to the disciplinary process. His incredible testimony at the disciplinary hearing signified a continuation of his inability or unwillingness to squarely face his actions. Private discipline is an inadequate response to such dishonest conduct, which certainly compounded respondent's original neglect of Dr. Silverman's matter.

## V. RECOMMENDATION

The Disciplinary Board of the Supreme Court of Pennsylvania recommends that the respondent, Arthur Joseph Werner, be suspended from the practice of law for a period of one year and one day.

It is further recommended that the expenses incurred in the investigation and prosecution of this matter are to be paid by the respondent.

Board Member Curran did not participate in the matter.

Board Members Teti, Wright and Gentile recused.

Board Members McLaughlin, Brown, Pietragallo and Nordenberg did not participate in the March 16, 2005 adjudication.

## ORDER

And now, August 10, 2005, upon consideration of the report and recommendations of the Disciplinary Board dated April 27, 2005, the petition for review and responses thereto, the request for oral argument is denied pursuant to Rule 208(e)(4), Pa.R.D.E., and it is hereby

ordered that Arthur Joseph Werner be and he is suspended from the bar of this Commonwealth for a period of one year and one day, and he shall comply with all the provisions of Rule 217, Pa.R.D.E.

It is further ordered that respondent shall pay costs to the Disciplinary Board pursuant to Rule 208(g), Pa.R.D.E.